**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**BRENDA A. BOSLEY, et al.,**

       Plaintiffs,

**v.**                                                                 **Civil Action No. 3:07-CV-142
(Judge Bailey)**

**MINERAL COUNTY COMMISSION,
CHIEF DEPUTY PAUL SABIN,
*of the Mineral County Sheriff's Office*, and
SHERIFF CRAIG FARLEY,**

       Defendants.

## ORDER AWARDING ATTORNEY FEES AND COSTS

The above-styled case is presently before the Court on plaintiffs' Motion for Award of Attorney Fees and Costs [Doc. 152].  Defendants did not file a timely response to the motion.  After reviewing the record and the arguments of the parties, this Court finds that plaintiffs' Motion for Award of Attorney Fees and Costs [Doc. 152] should be **GRANTED in part**.

## BACKGROUND

This case arises out of events which took place on August 19, 2005.   On that date, the Mineral County Prosecuting Attorney requested that Mineral County Deputy Sheriff Paul Sabin go to Dr. James C. Bosley's residence to serve a mental hygiene order on Dr. Bosley.  Defendant Mills, a state police trooper, voluntarily accompanied Sabin.  After their arrival at Dr. Bosley's residence, Dr. Bosley shot himself.

On October 15, 2007, plaintiffs brought suit in the Circuit Court of Mineral County,

1

pursuant to 42 U.S.C. § 1983 and the West Virginia Constitution, alleging violations of his Fifth and Fourteenth Amendment right to Due Process; his Fourth Amendment right to be free from unreasonable searches and seizures; and state claims for negligence and wrongful death. [Doc. 1-1].   Plaintiffs brought suit against: Colonel D.L. Lemmon, Superintendent of the West Virginia State Police, in his official capacity; West Virginia State Trooper James M. Mills, in his personal and official capacities; the Mineral County Sheriff's Office; and Chief Deputy Paul Sabin of the Mineral County Sheriff's Office, in his personal and official capacities. [Doc. 1-1].  On October 31, 2007, defendants Colonel D.L. Lemmon, Corporal James Mills, and the Mineral County Sheriff's Department removed this action to the United States District Court for the Northern District of West Virginia. [Doc. 1].   On August 31, 2008, plaintiffs voluntarily dismissed the 42 U.S.C. § 1983 claims against Colonel D.L. Lemmon and James M. Mills in their official capacities. [Doc. 50].   On February 25, 2009, plaintiffs filed an Amended Complaint. [Doc. 85].

In the Amended Complaint, plaintiffs dropped their Fourth Amendment claim, added the Mineral County Commission, and the Sheriff of Mineral County in his official capacity as defendants, and added a "failure to train" claim against the Mineral County Commission and the Sheriff of Mineral County. [Doc. 85].  The Amended Complaint states claims for: deprivation of life without due process of law under the Fifth and Fourteenth Amendments to the United States Constitution, and Article 3, Section 10 of the West Virginia Constitution; failure to train and implement training policies for service of mental hygiene orders against the Mineral County Commission and Sheriff in his official capacity; common law claims against all defendants for recklessness and/or negligence in failing to prevent Dr. Bosley from harming himself; and wrongful death. [Doc. 85].

2

On July 23, 2009, the Mineral County Defendants served an Offer of Judgment upon the plaintiffs in the amount of thirty-thousand dollars ($30,000.00).  The offer was silent as to the plaintiffs' accrued costs.  On July 28, 2009, plaintiffs accepted the offer and filed with the Court the Offer of Judgment and the Plaintiffs' Acceptance of Offer of Judgment.  [Doc. 126].  The Acceptance of Offer of Judgment settled all plaintiffs claims against defendants Mineral County Commission, Sheriff Craig Farley, and Deputy Paul Sabin (the "County Defendants"), leaving as defendants only Colonel Lemmon and Corporal Mills (the "State Defendants").  (Id.)  On August 31, 2009, this Court granted summary judgment in favor of the State Defendants.

On October 14, 2009, the Court granted Plaintiffs' Motion for Entry of Judgment Order and found that pursuant to Federal Rule of Civil Procedure 68, upon acceptance and filing of the offer of judgment, the plaintiffs were entitled to a judgment against the Mineral County Defendants in the amount of thirty-thousand dollars ($30,000.00), plus the plaintiffs' costs accrued at the time of the offer.  Such costs include the plaintiffs' attorney fees pursuant to the fee shifting provisions of 42 U.S.C. § 1988.

Accordingly, this Court directed plaintiffs to make application for attorney's fees and costs, first submitting the application to the defendants for consideration and if no agreement was reached within 30 days, to submit the application to the Court.  On November 13, 2009, plaintiffs submitted the fee applications of John C. Yoder and Harry P. Waddell to the defendants. ([Doc. 153] at 2).  Plaintiffs received no response from defendants until three weeks later.  (Id.)  On December 8, 2009, plaintiffs received letters from defense counsel addressed to plaintiffs' counsel. [Docs. 153-4, 153-5].  In the letters, defendants objected to the attorney fees claimed, stating that the amount was

3

unreasonable.  (Id.)  Defendants failed, however, to contest any specific time entries or provide any specific basis for this opinion.  (Id.)  Additionally in the letters, defendants requested that plaintiffs' counsel provide affidavits verifying their average billable rates and supporting evidence of the market for these services.   Finally, defendants requested that time spent prosecuting or defending claims against parties other than the Mineral County Sheriff's Office and Chief Deputy Paul Sabin be subtracted from the fee petition.

Plaintiffs acknowledge in their motion that, due to the fact that defendants did not respond to the fee applications until December 8, 2009, there was insufficient time to reach any resolution of plaintiffs' claim with defendants under the time frame established by the Court's Order.  ( [Doc. 153] at 3).  Accordingly, no agreement having been reached within 30 days after submission to the defendants, plaintiffs submitted to this Court the currently pending Motion for Award of Attorney Fees and Costs. [Doc. 152].

In their Motion, plaintiffs address the concerns raised by defendants in their letters to plaintiffs' counsel.  With regard to defendants' request that plaintiffs counsel provide affidavits verifying plaintiffs' counsel's average billable rates and supporting evidence of the market for their services, plaintiffs submitted that information with their fee petition to the Court. (See [Docs. 153-7 - 153-10]).  Second, in response to defendants objection that any time spent prosecuting or defending claims against defendants other than the Mineral County Sheriff's Office and Chief Deputy Paul Sabin must be subtracted from the fee petition in order for the amount to be proper, plaintiffs argue that the claims were so intertwined that it is unreasonable and impractical for plaintiffs to make that division.  ([Doc. 153] at 11-12).

With regard to the award of attorney fees, plaintiffs argue that they are the

4

"prevailing party" under 42 U.S.C. § 1988 as they accepted an offer of judgment from defendants which materially altered the relationship between plaintiffs and defendants to plaintiff's benefit. [Doc. 153].  Plaintiffs also submitted to the Court affidavits in support of the rate and time calculation for fee awards. [Docs. 153-7 - 153-10].   A brief summary of the information is as follows:

John C. Yoder: John Yoder has been practicing law for 35 years in several jurisdictions. His legal experience includes working as a state district judge in Kansas, working on the staff of the Chief Justice of the United States at the U. S. Supreme Court, and working as a senior supervisor at the U. S. Department of Justice. ([Doc. 153-7] at 2).  Mr. Yoder withdrew from the above-styled case December 1, 2008, to become a circuit judge for the 23rd Judicial Circuit. (Id. at 3).  Mr. Yoder requests a fee of $300.00 per hour.  (Id.) He also avers that he spent 191.10 hours working on the above-styled case.

Harry P. Waddell: Harry Waddell has been practicing law for 28 years in the state of West Virginia.  (Doc. 153-9] at 1).  His experience includes 14 years as a defense counsel with the law firm of Steptoe & Johnson where he was an equity partner, and an additional 14 years in private practice primarily representing plaintiffs in Martinsburg, West Virginia.  (Id. at 1-2).  Mr. Waddell requests a fee of $300.00 per hour.  (Id. at 2-3).  He also avers that he spent 170.60 hours working on the above-styled case.

## CITATION TO AUTHORITY

### I.   Standard

United States Code, Tile 42, Section 1988 provides: "[i]n any action or proceeding to enforce a provision of [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  The purpose of § 1988 is to "ensure effective access to the judicial process for persons with civil rights grievances without simultaneously producing windfalls to the attorneys."  *Trimper v. City of Norfolk, Va.*, 58 F.3d 68, 73 (4th Cir. 1995), *cert denied*, 516 U.S. 997 (1995).  "Accordingly, a prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'"*Spell v. McDaniel*, 852 F.2d 762, 765 (4th Cir. 1988) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (citing S.Rep. No. 94-1011, p.4 (1976))).  The burden of proving entitlement to such an award falls on the applicant.  *Hensley*, 461 U.S. at 437.  Whether to grant a request for an award of fees pursuant to 42 U.S.C. § 1988 "lies within the court's broad discretion, provided the court 'demonstrated a carefully reasoned analysis of both the factual circumstances and relevant legal precedents.'"  *West Virginians for Life, Inc. v. Smith*, 952 F. Supp. 342, 344 (S.D.W.Va. 1996) (quoting *Cooper v. Dyke*, 814 F.2d 941, 950 (4th Cir. 1987)).

In order to qualify as a prevailing party under 42 U.S.C. § 1988, "a civil rights plaintiff must obtain at least some relief on the merits of his claim.  The plaintiff must obtain an enforceable judgment against the defendant against whom fees are sought[.]" *Farrar v.*

6

*Hobby*, 506 U.S. 103, 111 (1992); *see also* **Hensley v. Eckerhart**, 461 U.S. 424, 433 (1983) (stating "[p]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.").  Here, it is clear that plaintiffs are the prevailing party as they were offered, and accepted, an Offer of Judgment settling all claims against the County Defendants. ([Docs. 126, 150]).

## II.   <u>Computation of Fee</u>

"The 'critical inquiry' in fee setting requires a determination of a reasonable rate of compensation in accordance with the factors articulated in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974)  and a subsequent multiplication of that rate by the number of hours reasonably expended. This process produces the 'lodestar' figure that is presumptively a reasonable fee without further adjustment. *Blum*, 465 U.S. at 897." *Lewis v. J.P. Stevens & Co.*, 849 F.2d 605, *2 (4th Cir. 1988).  The *Johnson* factors are as follows:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Daly v. Hill*, 790 F.2d 1071, 1076 n.2 (4th Cir. 1986) (citing *Johnson*, 488 F.2d at 717-

19).

After calculating the lodestar figure, the "court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones." ***Johnson v. City of Aiken***, 278 F.3d 333, 337 (4th Cir.2002). "Once the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." ***Id.***

The Court will address each loadstar factor in turn:

1.    <u>Time and Labor Expended</u>

It is up to the fee applicant to establish the number of hours worked. ***Hensley***, 461 U.S. at 437.  "The number of hours must obviously be adjusted to delete duplicative or unrelated hours.  At bottom, the number of hours must be reasonable and must represent the product of 'billing judgment.'" ***Run Creek Coal Sales, Inc. v. Caperton***, 31 F.3d 169, 174 (4th Cir. 1994) (quoting ***Hensley***, 461 U.S. at 437).

Here, each attorney has provided the Court with a detailed time sheet including the number of hours worked and a brief description of the work done. [Docs. 153-1, 153-3]. Defendants contend that the total for the hours billed is excessive. [Docs. 153-4, 153-5]. Defendants have, however, failed to state with any specificity in what way the amount is excessive (due to the hours billed, the hourly rate, or both).  Defendants did request in letters to plaintiffs' counsel, however, that hours devoted to litigation of claims against defendants other than the Mineral County Sheriff's Office and Chief Deputy Paul Sabin be subtracted from the hours in the fee petition.  (Id.) Plaintiffs responded that such a request was unreasonable because the claims against all defendants were so intertwined that

plaintiffs' counsel cannot make such a division.  The Court has reviewed the time sheets and finds that the hours billed do not "represent the product of 'billing judgment'" in light of the degree of plaintiffs' success.  **Caperton**, 31 F.3d at 174 (quoting **Hensley**, 461 U.S. at 437); (*see* factor 8, *infra*)

The Court finds defendants' request that the hours spent litigating claims against defendants other than the Mineral County Sheriff's Office and Chief Deputy Paul Sabin be subtracted from the hours in the fee petition, is a reasonable request.  (See [Docs. 153-4, 153-5).  Plaintiffs argue in their motion that separation of the hours spent on "winning claims from hours spent on losing claims [is] the exception rather than the rule."  ([Doc. 153] at 11) (citing **Smith v. Robinson**, 486 U.S. 992, 1006 (1984) ("[I]n most cases, there is no clear line between hours of work that contributed to a plaintiff's success and those that did not.")  Further, plaintiffs argue that when reviewing the hours expended, the court should look to whether the hours billed with regard to the claims against the other defendants were "related" or "unrelated" to the claims upon which plaintiffs prevailed. ([Doc. 153] at 11).  In support of this contention plaintiffs cite to **Hensley v. Eckerhart**, 461 U.S. 424, 435 (1983), quoting the following:

> In other cases the plaintiffs' claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the District Court should focus on the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

9

This Court agrees that the focus of its inquiry should be "the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation" and will account for that factor below (*see* factor 8, *infra*). ***Id.***

In reviewing the time sheets of counsel, however, the Court was able to find several entries which were solely related to reviewing, researching, and responding to motions filed by the State Defendants. Specifically, the Court finds that 25.4 hours should be subtracted from the fee request of attorney Yoder as those hours were unrelated to the claims against the County defendants[1].

2.    The Novelty and Difficulty of the Questions

Attorney Yoder avers that he has spent 23 years litigating "civil cases against government entities and government officials at both the federal and the state level... [and litigating] civil cases involving constitutional law issues." [Doc. 153-7]. Attorney Waddell avers that his 28 year practice "is primarily limited to the representation of plaintiffs in matters involving employment law, civil rights, personal injury, and medical malpractice." [Doc. 153-9]. The above-styled case dealt with claims of deliberate indifference brought under 42 U.S.C. § 1983, state wrongful death and negligence claims, as well as qualified immunity and state statutory immunity. Additionally, the Court notes that a remand order

_____

[1] The Court finds the following entries in Doc. 153-1 unrelated:
- Page 4: entries 4-9, and 11
- Page 5: entries 2-4, 7-8, and 11
- Page 6: entry 1
- Page 7: entries 9-10
- Page 14: entries 8-10, and 12
- Page 15: entries 4-11
- Page 16: entry 7

10

by this Court was appealed by defendants to the Fourth Circuit Court of Appeals early in the case.  The Court concludes that the issues, while perhaps unique, did not present unusually novel or difficult questions of law.  As such, the Court finds that plaintiffs are not entitled to an upward departure based on this lodestar factor, nor does this factor warrant a downward departure.

      3.    <u>Skill Required to Perform Services Involved</u>

This case primarily dealt with civil rights, state and federal immunity, and state tort law.  These are areas in which attorneys Yoder and Waddell state they regularly practice.  As such, counsel for plaintiffs were adequately prepared to handle the substantive issues.  Additionally, the combined 63 years of litigation experience of plaintiffs' counsel cannot be discounted by this Court.  Undoubtedly, the broad array of issues attorneys Yoder and Waddell have seen in their legal careers assisted plaintiffs in obtaining the judgment in this action.  The Court also finds that the hourly rates commanded by plaintiffs' counsel adequately reflect their level of expertise.  *(see* factor 5, *infra).*

      4.    <u>Preclusion from Other Employment</u>

Counsel for plaintiffs claim to have other cases they could have been working on, and getting paid for (either through fee paying clients or potential awards of attorney fees), but have not pointed to any particular case they were prevented from taking as a result of this litigation.  Further, the Court notes the short duration of the above-styled case, and the period awaiting a decision from the Fourth Circuit Court of Appeals, weigh against any upward adjustment.  This is because the Court finds that if counsel for plaintiffs have been prevented from taking other cases, it was not for an extended period.  Accordingly, this

11

Court finds that plaintiffs' speculative determination that other work was "lost" as a result of this case is insufficient to merit an upward adjustment of the lodestar in this case.

     5.   <u>The Customary Fee</u>

A fee award pursuant to 42 U.S.C. § 1988 is calculated according to the prevailing market rate. ***Blum v. Stenson***, 465 U.S. 886, 894 (1984). The relevant "market area" is generally the area in which the prosecuting Court sits. ***National Wildlife Federation v. Hanson***, 859 F.2d 313 (4th Cir. 1988). The determination of the prevailing market rate is fact intensive, and "is best guided by what attorneys earn from paying clients for similar services in similar circumstances. While evidence of fees paid to attorneys of comparable skill in similar circumstances is relevant, so too is the rate actually charged by the petitioning attorneys when it is shown that they have collected those rates in the past from a client." ***Caperton***, 31 F.3d at 175 (internal citations omitted). Should the fee applicant fail to supply the Court with such information, the Court may establish a reasonable rate based on its own knowledge and experience of the relevant market. *See **Caperton***, 31 F.3d at 179.

Here, plaintiffs submitted affidavits from attorney David M. Hammer [Docs. 153-8, 153-10]. Additionally, both attorneys Yoder and Waddell have provided the Court with evidence that they have collected fees at $300.00 per hour in the past and that the rate is at or below their customary billing rate. [Docs. 153-7, 153-9].

Specifically, attorney Yoder requests an hourly rate of $300.00. He states in his affidavit that this is the hourly rate paid by clients who are not indigent. He also notes that from 2000 to the end of 2006, he billed clients at $250.00 per hour, but that he raised his

rate to $300.00 per hour at the beginning of 2007.  In 2001, attorney Yoder was awarded a fee of $250.00 per hour in the Southern District of West Virginia.

Attorney Waddell also requests an hourly rate of $300.00.  He states in his affidavit that this is the hourly rate paid by clients who are not indigent.  He also notes that this has been his regular hourly rate since January 1, 2006.  In 2006, attorney Waddell was awarded a fee of $300.00 per hour in the Northern District of West Virginia.  He also avers that he is currently representing a client in a similar case for a non-contingent fee of $300.00 per hour.

The affidavits of attorney David Hammer aver that a rate of $300.00 is at or below the rate paid to attorneys of comparable skill in similar circumstances.  (See [Docs. 153-8, 153-10]) (citing fee awards in state and federal cases of $300.00 per hour to $400.00 per hour).

While the Court credits the affidavits of attorneys Yoder, Waddell, and Hammer, this Court also has knowledge of the relevant market, and has reviewed fee awards granted in similar cases in West Virginia.  *See **Anderson v. Penn National Gaming, Inc., et. al.**,* 2007 WL 2750679 (N.D.W.Va. Sept. 19, 2007) (awarding contested fee of $250.00 per hour in FLSA case); ***Claypool v. Barnhart***, 294 F.Supp.2d 829, 834 (S.D.W.Va. October 9, 2003) (awarding contingency fee in Social Security benefits case, but noting that counsel's usual hourly rate is $250.00 per hour); ***Bostic, v. American General Finance, Inc.***, 87 F.Supp.2d 611, 618-20 (S.D.W.Va. 2000) (awarding contested fees of $250.00, $225.00, and $175.00 in TILA case); *See also **Westfall v. Kendle International, CPU, LLC, et. al.**,* 2008 WL 3852718 (N.D.W.Va. August 15, 2008) (awarding fees at

13

uncontested hourly rates of $300.00, $250.00, and $150.00 in WCPA and FLSA case); *Moats v. City Hospital, Inc.*, 2007 WL 2220282 (N.D.W.Va. August 2, 2007) (awarding uncontested fee of $90.00 per hour in discovery dispute); *United States Vuyyuru v. Jadhav, M.D.*, 555 F.3d 337, 357 (4th Cir. 2009) (affirming award of $310.00 per hour in Eastern District of Virginia FCA case); *Grissom, II v. The Mills Corp.*, 549 F.3d 313, 323 (4th Cir. 2008) (reversing and remanding, finding that district court abused its discretion in awarding fees at an hourly rate above $335.00 and $380.00 for partners, $180.00, $200.00, and $250.00 for associates in Eastern District of Virginia in Sarbanes-Oxley whistle-blower case); *Trimper v. City of Norfolk, Va.*, 58 F.3d 68, 75-76 (4th Cir. 1995) (affirming fee award of $100.00 per hour, where attorney requested fee of $215.00 per hour in Eastern District of Virginia in uncomplicated civil rights case); *West Virginia for Life, Inc. v. Smith*, 952 F.Supp. 342, 346-47 (S.D.W.Va. 1996) (awarding contested fees of $250.00, $170.00, $150.00, $110.00, and $100.00 in civil rights case); *Broyles v. Director, Office of Workers Comp. Prog.*, 974 F.2d 508, 512-513 (4th Cir. 1992) (awarding lump sum but noting requested fee of $167.00 per hour in black lung case before the Fourth Circuit and the United States Supreme Court).

The Court has applied its knowledge of the relevant market; reviewed the affidavits of attorneys Yoder, Waddell, and Hammer; as well as reviewed other fee awards in similar cases in West Virginia; and finds that a fee award of $250.00 per hour is an appropriate hourly rate. This Court finds that the prevailing market rate for attorneys with similar experience in similar cases is $250.00 per hour. Specifically, the Court notes that while both attorneys attest that the rate of $300.00 per hour is paid by those clients who are able,

there is no indication that a plaintiff seeking to challenge police action under § 1983, which provides for fee shifting pursuant to § 1988, would typically be a fee-paying client. As such, there is no indication that a case raising constitutional and state tort claims, would command the same fee as a business dispute. Based on the foregoing, the Court finds that a reasonable hourly rate for both attorneys Yoder and Waddell is $250.00 per hour.

6.    Whether the Fee is Fixed or Contingent

Neither attorney address whether the fee in this case was fixed or contingent. Counsel for plaintiffs did, however, provide the Court with what appears to be a standard fee agreement. [Doc. 153-6]. The agreement provides for payment of the greater of $300.00 per hour, or certain percentages of the recovery. (Id. at 3). While the agreement appears to require payment by the plaintiff of attorneys' fees (see Id. at 2), there is nothing to suggest to the Court that plaintiff paid fees–nor based on common sense is this Court convinced that plaintiff would accept a $30,000.00 settlement if plaintiff owed counsel the $120,000.00 counsel represent as the fee due and owing.

Based on the above, therefore, this Court finds that the above-styled case was taken on a contingency, meaning any fee award was contingent on plaintiffs prevailing and receiving a fee award pursuant to 42 U.S.C. §1988. As all attorneys put time and expense into the above-styled case with the risk that their efforts might never be compensated, this Court finds that this factor weighs in favor of counsel receiving compensation at the hourly rates set out above.

7.    Time Limitations

Time limitations were not a significant factor in this litigation. As noted by plaintiffs'

15

counsel, although plaintiffs sought prompt resolution of the claims, there was no need for exceptional haste.  As such, the Court finds that plaintiffs are not entitled to an upward departure based on this lodestar factor, nor does this factor warrant a downward departure.

       8.    <u>Amount Involved and Result Obtained</u>

       Plaintiffs were the prevailing parties in this action, although the relief sought was secured by settlement instead of by verdict or judgment.  Plaintiffs achieved a "material change in the legal relationship" with the County Defendants. ***Buckhannon Bd. & Care Home v. W. Va. Dept. of Health and Human Resources***, 532 U.S. 598, 604 (2001); *see also*, ***Farrar v. Hobby***, 506 U.S. 103 (1992). The material change in legal relationship resulting from the settlement was of direct benefit to plaintiffs.  ***Farrar***, 506 U.S. at 111-1112.  As discussed above, plaintiffs, as the prevailing party, are entitled to the presumption that their attorney fees and costs should be awarded.  The amount of those fees should represent adequate compensation for the degree of success plaintiff obtained. *See* ***Hensley***, 461 U.S. at 436.

       The Supreme Court in ***Hensley*** framed the appropriate inquiry as follows:

> If... a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the ***most critical factor*** is the degree of success

16

obtained.

Application of this principle is particularly important in complex civil rights litigation involving numerous challenges to institutional practices or conditions. This type of litigation is lengthy and demands many hours of lawyers' services. Although the plaintiff often may succeed in identifying some unlawful practices or conditions, the range of possible success is vast. That the plaintiff is a "prevailing party" therefore may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved.  In this case, for example, the District Court's award of fees based on 2,557 hours worked may have been reasonable in light of the substantial relief obtained.  But had respondents prevailed on only one of their six general claims, for example the claim that petitioners' visitation, mail, and telephone policies were overly restrictive, *see* n. 1, *supra*, a fee award based on the claimed hours clearly would have been excessive.

There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, ***or it may simply reduce the award to account for the limited success***. The court necessarily has discretion in making this equitable judgment. This discretion, however, must be exercised in light of the considerations we have identified.

*Hensley*, 461 U.S. at 436-37 (emphasis added).

Counsel for plaintiffs argue that because the plaintiffs did not fail to recover any of the relief sought from the County Defendants, there should be no offset or reduction on the theory that plaintiffs did not fully prevail against the County Defendants.  Plaintiffs did not,

however, succeed on *all* claims against *all* defendants. Specifically, plaintiffs' claims against the State Defendants were dismissed at the summary judgment stage. [Doc. 147]. Additionally, although plaintiffs "prevailed" on their claims against the County Defendants because plaintiffs received a Judgment of $30,000.00 in their favor, the amount recovered is small considering it reflects settlement of the federal claims as well as the state wrongful death, negligence, and failure to train claims.

While this Court recognizes that the amount recovered is not dispositive of the value of the work the attorneys provided, the Court would be brash to ignore the fact that plaintiffs' counsel is requesting a fee of four times the amount recovered by plaintiffs, and requesting compensation for work that includes the failed claims against the State Defendants[2]. Accordingly, this Court finds that a reduction of the loadstar figure by 35 percent would result in adequate compensation for the work performed by counsel for plaintiffs. The Court notes that this percentage is not a mathematical calculation based on the *number* of claims plaintiffs prevailed on, or the *number* of defendants plaintiffs prevailed against, but takes into consideration the reasonableness of the hours expended by counsel in relation to the degree of plaintiffs' success. *See* **Hensley**, 461 U.S. at 435 n.11 (stating " We agree with the District Court's rejection of a mathematical approach comparing the total number of issues in the case with those actually prevailed upon.... Such a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors.

---

[2] Although the Court subtracted 25.4 hours from attorney Yoder's fee petition, those hours were related to specific filings such as the Motion to Dismiss made by the State Defendants, and do not encompass the total time spent researching, drafting, and otherwise litigating the unsuccessful claims against the State Defendants.

Nor is it necessarily significant that a prevailing plaintiff did not receive all of the relief requested.")

    9.    <u>Experience, Reputation and Ability of Attorneys</u>

As discussed above in factor 5, the Court finds the adjusted hourly rates adequately account for each attorney's experience, reputation, and ability.

    10.    <u>Undesirability of the Case</u>

The only 'undesirability' attested to by plaintiffs' counsel is "because of the defendants involved and the legal obstacles presented by this case, many attorneys would have been hesitant to take plaintiffs' case and risk the nonpayment of the necessary legal fees incurred." ([Doc. 153] at 10).  The Court recognizes that fee shifting statutes enable attorneys to take on cases for clients that would otherwise be unable to afford their services, and that litigating under such statutes raises certain risks of non-recovery for the attorneys litigating the case.  The Court also finds, however, that litigating under fee shifting statutes or on contingency is a fairly common practice, and finds that the risk of non-recovery does not raise the 'undesirability' of a case to such an extent as to merit an upward adjustment of the lodestar in this case.

    11.    <u>Nature and Length of Relationship with Client</u>

Counsel for plaintiffs had no prior relationship with the plaintiffs in this case. Accordingly, the Court finds this factor does not merit an upward or downward adjustment of the lodestar.

12.   Awards in Similar Cases

As discussed above in factor 5, the Court finds the adjusted hourly rates will result in fee awards that are commiserate with fee awards in similar cases.

13.   Lodestar Calculation:

Based on the foregoing reasoning, the Court finds the following lodestar fee:

| | | |
|---|---|---|
| John C. Yoder: | 165.7 hours[3] at $250 per hour = | $41,425.00 |
| | 7.00 hours at $150.00 per hour = | $1050.00 |
| Harry P. Waddell: | 170.6 hours at $250 per hour = | $42,650.00 |
| | | _____ |
| | | $85,125.00 |
| | | (0.65) as per factor 8, *supra* |
| | | _____ |
| **TOTAL:** | | **$55,331.25** |

The Court further finds that the costs and expenses claimed by plaintiffs for filing fees, phone calls, postage, copies, etc. are reasonable and awards plaintiffs **$11,132.55**[4] in costs and expenses.

_____

[3] This number results from 191.1 hours requested - 25.4 hours the Court found unrelated to the claims against the County defendants.

[4]   The Court found that the cost of "Payment to Candlewyck Inn for room depositions" was $81.75, not $91.75 and accordingly reduced the costs by $10.00.  (See [Doc. 153-3] at 6; [Doc. 156-8]).

20

## CONCLUSION

Based on the foregoing, this Court finds that Plaintiffs' Motion for Attorney Fees [Doc. 152] should be **GRANTED in part**.  The Court **ORDERS** as follows:

• Plaintiffs are **AWARDED** attorney fees in the amount of **$55,331.25** and costs in the amount of **$11,132.55**.  This fee award shall be **ENTERED** by the Clerk in a separate judgment order.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

It is so **ORDERED**.

**DATED:** January 22, 2010

JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE